MCLAIN PC
Erik M. McLain SBN 219008
114 Pacifica Ste. 470
Irvine, CA 92618
Telephone: (949) 500-2818
Email: em@mclainfirm.com

Attorney for Defendant AND Counter-Claimant
MATT HOLLYWOOD

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 'A' RECORDINGS LTD, a UK Private Limited Company, and ANTON NEWCOMBE, an individual doing business as BRIAN JONESTOWN MASSACRE,<br><br>Plaintiffs,<br><br>v.<br><br>MATT HOLLYWOOD, an individual,<br><br>Defendant. | Case No: 5:17-cv-06442-VC<br><br>**DEFENDANT MATT HOLLYWOOD'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>**1.) Supplemental Declaration of Erik McLain;**<br>**2.) Defendant's Response to Plaintiffs' Evidentiary Objections.**<br><br>**Date: January 17, 2019**<br>**Time: 10:00 a.m.**<br>**Judge: Hon. Vince Chhabria**<br>**Courtroom: 4, 17th Floor** |
| MATT HOLLYWOOD, an individual,<br><br>Counter-Complainant,<br><br>VS.<br><br>'A' RECORDINGS LTD, a UK Private Limited Company, and ANTON NEWCOMBE, an individual doing business as BRIAN JONESTOWN MASSACRE, and DOES 1-20, INCLUSIVE,<br><br>Counter-Defendants. | |

DEFENDANT MATT HOLLYWOOD'S REPLY MEMORANDUM

## <u>REPLY MEMORANDUM IN SUPPORT OF</u>
## <u>MOTION FOR SUMMARY JUDGMENT</u>

**I.      INTRODUCTION**

Plaintiffs' attempt to oppose Matt Hollywood's motion on the grounds that there is a mischaracterization of the relief sought, i.e. sole authorship, is misleading.   Regardless of semantics, it is clear that Plaintiffs' Declaratory relief action is challenged by reality; Matt Hollywood is a long recognized, joint author of the sound recordings.   It is this challenge that Plaintiff has repeatedly skirted despite actual notice of joint authorship claims on behalf of Matt Hollywood (AND multiple other artists).   Plaintiffs are confronted with their failure to act in timely manner:  Anton Newcombe's copyright attorney (Barry Simons) and his business manager (Stuart Flint) admitted to receiving actual notice of the copyright registrations, contemplated taking action, and decided to abstain due to the financial burdens of ongoing litigation. (See Exhibit E to McLain Declaration, pp. 90-95.)   The notices, provided in Feb 2013 and April 2014, constituted an accrual of claims, commencing the 3-year statute of limitations.  Additional, multiple notices were received before, and during, actual Declaratory Relief litigation with other members of Brian Jonestown Massacre.   (See Exhibit 7 to Cohorn Declaration.)   These facts are buttressed by the credits on the album covers, which identify Matt Hollywood as a joint author of the sound recordings.   Those credits were written, approved, and have been repeatedly perpetuated by Newcombe.   Plaintiff swore by oath that he viewed the sound recording registrations as legal and adversarial challenges to his ownership interests:

> ***Deposition of Anton Newcombe (Ex. D to McLain Declaration) pg. 311-312, ll. 18-6):***
>
> Q:  Right, but you testified this morning that you were aware that Dean Taylor had filed copyright registrations in 2013 and 2014.  Right?
>
> **A:  I wasn't aware that it was multiple times.  I just realized that I was aware that he had – had found some lawyer, and was making <u>claims, counterclaims, or a counterclaim to my copyrights</u> of my own compositions.**
>
> Q:  Right and you did nothing about it?
>
> **A:  My manager and my business-affairs people addressed that.  As I said, they handled the business.**

DEFENDANT MATT HOLLYWOOD'S REPLY MEMORANDUM                                                    1

Q:  They addressed it?

A:  **Evidently.**

Q:  What did they do?

A:  **I am not sure.**

Plaintiffs' Opposition fails to reconcile Newcombe's voluntary characterization of the copyright registrations (at deposition) as "claims, counterclaims, or a counterclaim to my copyrights." Notably, Plaintiffs now desperately assert that merely because Dean Taylor *conducted* the registrations, this somehow negates actual notice of Matt Hollywood's adverse interests to Plaintiffs' sole authorship or, stated differently, Matt Hollywood's joint authorship claims. This is particularly troubling as Plaintiff *simultaneously* alleges that Matt Hollywood's claims are time-barred despite Plaintiffs' written acknowledgement of his rights in December 2016. (See McLain Decl. Ex. C.) Arguably, *based on Plaintiffs' analysis*, Mr. Hollywood's claims for Declaratory Relief did not accrue until Plaintiff filed this lawsuit in November 2017, thereby challenging Mr. Hollywood's joint authorship interests in the sound recording.

Plaintiffs' attempts to argue "both sides of the coin" are disingenuous.

Likewise, Plaintiffs' Opposition to the gratis license defects and the request for injunctive relief concerning the copyright registrations ignore critical factual citations and controlling law.

## II.    ARGUMENT

### A.    Plaintiffs Completely Ignore Stuart Flint's Key Evidence Regarding Actual Notice.

Arising from Plaintiffs' Opposition, there remain several undisputed facts that Plaintiff not only completely ignored, but are also fatal to their untimely attempted grab for sole ownership. First, Plaintiffs do not address the deposition testimony of Stuart Flint. Mr. Flint testified that he and Barry Simons received the registrations, perceived the registrations as threats to Newcombe, and encountered *opposing legal interests* concerning Newcombe's ownership claims. Despite such notice, they did not take any further legal action. (McLain Decl. Ex. E, pg. 90-94.) Now, Plaintiffs belatedly assert that this did not give rise to a "ripe" cause of action

DEFENDANT MATT HOLLYWOOD'S REPLY MEMORANDUM

2

despite the admitted adversarial nature.   Next, Plaintiffs completely ignore Anton Newcombe's characterization of the 2013/2014 registrations.  (See McLain Decl. Ex. D, pg. 311-312 *supra.*) Newcombe himself declares the copyright registrations as "claims, counterclaims, or a counterclaim to my copyrights."  In addition, Newcombe admitted that he wrote the album covers and credited Matt Hollywood as a performer and producer on the sound recordings.  (See McLain Decl., Ex. D, pp. 119-120, and Exhibits G-I.)

Finally, and perhaps most conspicuous, Plaintiff fails to adequately address the correspondence from Ms. Cohorn dated December 16, *2016* whereby she acknowledged that "Mr. Hollywood is a co-author of the sound recordings Thank God for Mental Illness and Their Satanic Majesties' Second Request" and *specifically* cited the registrations as evidence of these joint sound recording interests.  (McLain Decl., Ex. C, fn. 1)  Moreover, her correspondence includes the admission that Mr. Hollywood is a co-author "along with Mr. Newcombe *and several other band members.*"  Now, stuck with the harmful consequences of these admissions, Plaintiffs resort to weak claims of admissibility.[1]

**B.      Plaintiffs' Claims for Declaratory Relief Concerning Matt Hollywood's Joint Authorship/Ownership Interests Were Ripe When the Registrations Were Filed.**

Plaintiffs' Opposition disingenuously states that their claims for Declaratory Relief are not aimed at obtaining sole authorship, (despite their adopted position with regard to the Counter-Claims) but rather a declaration that Matt Hollywood is not a sound recording author. This is a difference without material distinction.  Inexplicably, Plaintiffs' assert that the S.R. copyright registrations are not adverse or inconsistent to their assertion.   Simultaneously, Plaintiffs also seek an injunction to force Mr. Hollywood to file a supplemental registration to accurately depict the authorship of "No Come Down."   Newcombe and Barry Simons filed the P.A. registration for *No Come Down*.  Plaintiff now wants the District Court to bail Newcombe

---

[1] Plaintiffs' objection to Exhibit C is separately replied to in Defendant's Response to Objections filed concurrently with this Reply Memorandum.

DEFENDANT MATT HOLLYWOOD'S REPLY MEMORANDUM

3

out of his decision to credit Hollywood 100%. Simultaneously, Plaintiffs argue that the registrations "have little if any impact on Plaintiffs' legal rights. They do not purport to establish that Newcombe has no authorship or ownership rights in the works…" (Plaintiffs' Opposition at page 3, ll. 23-25.) Plaintiffs' Motion for Partial Summary Judgment cites extensive case law concerning the accrual of Declaratory Relief actions for copyright ownership. These citations are abandoned in Opposition to Defendant's Motion, and are instead substituted for citations pertaining to general principles of ripeness in trademark and patent litigation.

> **1.      The Copyright Registrations Were Made on All Band Members Behalf in Response to Documented Disputes Over Ownership and During the Jeff Davies Litigation Concerning Ownership.**

Under *MedImmune, Inc,* Plaintiffs' claims concerning Mr. Hollywood's authorship were ripe as early as February 2013. The Supreme Court in *MedImmune* clarified that "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." (*MedImmune,* 549 U.S. at 127, 2007.) Plaintiffs state that the claim for declaratory judgment became ripe when Mr. Hollywood asserted ownership in a letter from Mr. McLain in November 2016. Following this analysis, coupled with Newcombe's own admission concerning the significance of the copyright registrations (See McLain Decl, Ex. C, particularly footnote 1), it is insurmountable that Plaintiffs claim became "ripe" in 2013.

The correspondence and dispute that Stuart Flint referenced in his deposition can be summarized: On or about February 13, 2013 counsel for Dean Taylor, (a member of Brian Jonestown Massacre) wrote to Barry Simons concerning "Dean Taylor/Anton Newcombe Copyright Dispute" specifically disputing Anton Newcombe's legal claim of sole authorship and

DEFENDANT MATT HOLLYWOOD'S REPLY MEMORANDUM

specifically threatened to file Declaratory Relief actions for joint authorship in the works *Take It From the Man* and *Thank God For Mental Illness.*[2] (Supplemental Declaration of McLain, Exhibit M.)

On or about February 19, 2013, Barry Simons responded to Attorney Korn and expressly disputed any other band members authorship/ownership interests in the sound recordings. (Supplemental McLain Declaration, Exhibit N.) On February 27, 2013, and in direct response to Barry Simons, Attorney Korn registered the sound recording for *Thank God For Mental Illness,* named all authors, and specifically included notice to "Anton Newcombe c/o Law Office of Barry Simons, 1655 Polk Street, Suite #2, San Francisco, CA 94109.) (See McLain Declaration, Ex.C)[3]

This was the chain of events that Stuart Flint testified regarding "correspondence" between the lawyers concerning the copyright registrations. Mr. Flint further testified that Newcombe and his agents took no action because "they were reeling from the litigation costs" and Mr. Taylor's lawyer "did not respond" to further letters. (See McLain Decl., Ex. E, pg. 90-95.) These facts alone (*arguendo*) satisfy the tenets of *MedImmune, Inc. v. Genentech, Inc.* 549 U.S. 118, 127, (2007) (as cited by Plaintiff.) There was clearly a "substantial controversy [concerning the ownership] between parties having adverse legal interests, of sufficient immediacy and reality." Newcombe was on notice that there were multiple joint authorship claims inconsistent with his claim of exclusive rights. Newcombe was on notice that a joint author claim inconsistent with his claim of exclusive right to exploit the works was registered.

---

[2] This letter and the response by Barry Simons were filed by Anton Newcombe in the Jeff Davies litigation as Document 69-2, Document 69-3 but are also attached to the Supplemental McLain Declaration as Exhibits M and N.
[3] Compendium on Copyright Registration Section 405.1 Joint Works
The U.S. Copyright Office will accept an application filed by or on behalf of one or more authors of a joint work if the application is otherwise proper and complete. *The application must identify all of the authors of the joint work.*

DEFENDANT MATT HOLLYWOOD'S REPLY MEMORANDUM

The joint authors were named, and included Hollywood.  Newcombe had reason to know that Hollywood was a legitimate authorship claimant to the sound recordings: Newcombe was the one who approved or wrote the credits identifying Hollywood as a joint producer of the records. The 2013 and 2014 filings by Taylor made all joint authors listed adverse to Newcombe's claims of exclusive ownership.  The fact that Hollywood was not aware of the registrations is immaterial.  A controversy existed as soon as Newcombe was on notice that the other band members were named as registered claimants to the sound recordings.

Each of these registrations became known to Newcombe, through his counsel and management, and the registrations immediately touched upon the legal relations of every person named in the three registrations.  Notably, these registrations diminished Plaintiff's sound recording ownership interests from 100% to 20%.  Simultaneously, the registration established 20% ownership to four authors (Hollywood, Taylor, Gion, Glaze) who Newcombe sought to eliminate.  Newcombe admits to intentional subterfuge about ownership.  (McLain Decl., Exhibit D, pp. 229-233.)  Mr. Flint testified Newcombe struggles with veracity.  (McLain Supplemental Declaration, Exhibit O, pages 101-102.)

Additionally, Mr. Flint testified that he had no knowledge of any understandings between Mr. Hollywood and Newcombe, and that he was not directed to know or discuss matters about Mr. Hollywood, noting "didn't know the situation between them."  (McLain Supplemental Decl, Ex. O, pp. 41-46.)  Likewise, Mr. Flint testified, at length, that he did not know the terms of the Bomp license as his only source of information on this topic was from Mr. Newcombe, who according to Mr. Flint is unreliable.  (Id. at pp. 101-102.)  Now, Mr. Flint purports to competently testify regarding royalty arrangements, licensing arrangements, or copyright arrangements between Mr. Hollywood and Newcombe.  (See Declaration of Stuart Flint

DEFENDANT MATT HOLLYWOOD'S REPLY MEMORANDUM

6

submitted by Plaintiffs, ¶¶ 2,5,9.) Newcombe's managers and lawyers clearly perceived the 2013-2014 registrations as a matter of legal threat, controversy, and adversity.  This is evidenced further by the testimony of Stuart Flint and Anton Newcombe's own characterization of the registrations as "claims, counterclaims, or a counterclaim to his copyrights."

> **2.   Plaintiff Completely Abandons Governing Case Law Regarding the Accrual of Copyright Ownership Claims.**

Despite extensive citation to cases such as *Zuill v. Shanahan,* 80 F.3d 1366, 1370 (9th Cir. 1996); and *Gary Friedrich Enters., LLC v. Marvel Characters, Inc.,* 716 F.3d 302 in an attempt to invalidate Matt Hollywood's Declaratory Relief action, Newcombe now abandons these cases when faced with the statute of limitations against his own Declaratory Relief action.   As Plaintiffs point out in their Opposition, accrual is the corollary to ripeness.  (Plaintiffs' Opposition at page 2, citing *Levald, Inc. v. City of Palm Desert,* 998 F.2d 680, 687 (9th Cir. 1993.)  Accrual of a copyright ownership claim is at the heart of analysis contained in *Gaiman, Brownstein, Zuill,* etc… Yet none of these copyright cases are analyzed in Newcombe's Opposition to Defendant Matt Hollywood's Motion for Summary Judgment.

> **C.   The Defects in Plaintiffs' Declaratory Relief Action Regarding an Implied "Gratis" License Remain and Are Supported by Cited Evidence.**

As an initial matter, Plaintiffs challenge Defendant's Motion for Summary Judgment on the basis that his arguments are somehow not supported by adequate citations to the record. (Plaintiffs' Opposition at page 5-6, ll. 25-8.)  In particular, Defendant pointed out several key facts concerning the purported 'gratis' license notice: "Plaintiffs' own lawyers represented that they knew of no 'gratis' license and acknowledged Mr. Hollywood's right to royalties on numerous occasions.  This included written acknowledgement of Mr. Hollywood's rights; providing accountings reflecting monies owed to Hollywood and paying mechanical royalties on

DEFENDANT MATT HOLLYWOOD'S REPLY MEMORANDUM

Mr. Hollywood's behalf." (See McLain Supp. Decl., Ex. O, pp. 71-76, 137: Mr. Flint testified

that mechanicals were paid by 'A' Recordings on behalf of Matt Hollywood.) Paragraph 6 of

Mr. Flint's Declaration is inconsistent with this deposition testimony.

Each of these factual assertions were accurately reflected by citations to the record. First,

Exhibit C and Exhibit J include acknowledgements from Plaintiffs' counsel concerning the

sound registrations and included accountings that were voluntarily provided, reflecting "Matt

Hollywood's Share in U.S. Dollars." Nowhere in any of these accountings or emails contained

in Exhibit J did counsel state that this "Share in U.S. Dollars" was "amounts Defendant could

potentially be entitled to if his claims were to succeed." (See Plaintiffs' Opposition, pg. 6, ll. 12-

16.) Rather, the accountings were provided voluntarily over the course of several months.

More telling however, is the fact that Plaintiffs' counsel pointed out in the December 16,

2016 correspondence: (See McLain Decl., Ex. C, page 3[4].)

> "We are unaware at this time of any written grant to Newcombe of rights to use any of
> the composition of which Mr. Hollywood is the sole author, though our investigation is
> ongoing. Of course, as a co-owner of the large majority of the works at issue, Mr.
> Newcombe did not and does not need Mr. Hollywood's authorization for the uses he has
> made of the co-owned compositions."

Counsel renounced any grant to Newcombe of any rights. Moreover, it was Mr.

Newcombe's status as a co-owner of the large majority of the works that gave him the right to

the uses he has made of the co-owned compositions. Counsel specifically did not mention any

'gratis' license and denied knowledge of such. Moreover, Barry Simons expressly renounced

any knowledge of a 'gratis' license. (See McLain Decl., Ex. F.) It wasn't until nearly a year

later, that Plaintiff first *mentioned* the existence of a gratis license. The license to Bomp, by

Newcombe's own admission, permitted a royalty-free license contingent on ownership and low

sales volume.

---

[4] Response to Plaintiffs' Objections to Exhibits C and J is filed concurrently with this Reply.

DEFENDANT MATT HOLLYWOOD'S REPLY MEMORANDUM

Regardless of Counsel's position, Newcombe himself testified that the only evidence he had of an implied license was Hollywood's alleged failure to request sales royalties.  (See McLain Decl, Ex. D. pgs. 174-190.)  This alone, is insufficient as a matter of law to establish a gratis license as any failure to request sales royalties (*arguendo*) could have only occurred after creation.  Plaintiff cites *Asset Marketing Sys., Inc. v. Gagnon*, 542 F.3d 748 (9th Cir. 2008) when arguing the existence of a gratis license (Opposition pg. 7, ll. 5-7) but omits key language regarding the determination, namely:

> "The relevant intent is the licensor's objective intent *at the time of the creation and delivery* of the software as manifested by the parties' conduct.   See *Effects*, 908 F.2d at 559 n. 6 (noting that "every objective fact concerning the transaction" supported the finding that an implied license existed);  see also *John G. Danielson, Inc. v. Winchester-Conant Props., Inc.*, 322 F.3d 26, 42 (1st Cir.2003); The First and Fourth Circuits consider the following factors to determine such an intent:

>> (1)  whether the parties were engaged in a short-term discrete transaction as opposed to an ongoing relationship;  (2) whether the creator utilized written contracts providing that copyrighted materials could only be used with the creator's future involvement or express permission;  and (3) whether the creator's conduct during the creation or delivery of the copyrighted material indicated that use of the material without the creator's involvement or consent was permissible."

As the *Gagnon* Court noted, an implied license can be found by conduct, but only as determined by the creator's conduct *at the time of the creation and delivery*. In the instant matter, the time of the creation and delivery of the sound recordings could have only occurred at the time of Matt Hollywood's performance.   Plaintiffs grossly fail to offer any evidence that Matt Hollywood's conduct at the time of his performance or recording offered any indication that he did not intend to receive compensation, or grant a 'gratis' license for exploitation into perpetuity.

> **D.**     **Plaintiff Fails to Distinguish The Limitations Concerning Administrative Functions of the Copyright Office, Thereby Precluding Injunctive Relief For Supplemental Copyright Registrations.**

DEFENDANT MATT HOLLYWOOD'S REPLY MEMORANDUM

Plaintiffs' Opposition admits that there is a simple method for requesting a supplementary copyright registration pursuant to 37 C.F.R. Section 202.6.  However, that Regulation specifically provides for application to the Copyright Office and does not address any Court's obligations or authority to order registrations.  Rather, the Court in *Syntek Semiconductor Co. v. MicroChip Technology*, 307 F.3d 781, 82 (9th Cir. 2002) made clear that cancellation of a copyright registration is certainly an administrative function, just as much as issuing a registration is an administrative function.  Section 701 of the Copyright Act explicitly states that "all administrative functions and duties are the responsibility of the Register of Copyrights."  17 U.S.C. Section 701(a).

## III.    CONCLUSION

Plaintiffs have adopted different factual interpretations and different legal positions depending on which context the facts and law are being addressed.   Plaintiff himself, his business managers, and multiple lawyers acknowledged notice of adverse conditions and admitted that they all did nothing in response.  There simply is no evidence of a 'gratis' license as Plaintiff cannot delineate any conduct that occurred at the alleged time and alleged delivery of the creation.  Finally, Plaintiffs' claims for injunctive relief are not properly before this Court.  For the foregoing reasons, Defendant Matt Hollywood respectfully requests that this Court grant his Motion for Summary Judgment in its Entirety.

Respectfully submitted,

Dated:  January 3, 2019                              MCLAIN LAW FIRM

By:/s/ *Erik McLain*
Erik McLain
Attorneys for Defendant/CC
MATT HOLLYWOOD

DEFENDANT MATT HOLLYWOOD'S REPLY MEMORANDUM

10